1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AMANI BOLDEN, | Case No. 23-cv-03006-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS IN PART** |
| RICHMOND POLICE DEPARTMENT, | Re: ECF No. 5 |
| Defendant. | |

**INTRODUCTION**

The plaintiff, Amani Bolden, sued the Richmond Police Department for alleged civil-rights

violations stemming from two incidents. First, in March 2022, an officer — responding to a tip

that the plaintiff and his friend were waiving a gun in the plaintiff's car — approached the plaintiff

in his driveway and allegedly harassed him, used excessive force to restrain and search him, and

searched his vehicle unreasonably. Second, in November 2022, the plaintiff asked the Richmond

Police Department for assistance enforcing a protective order against a third party, Kathleen

Lopez, and the department refused to assist and instead told the plaintiff that he would be arrested

if he responded to Ms. Lopez. The plaintiff brings four claims under 42 U.S.C. § 1983: (1)

"violation of federal civil rights" by "invading his privacy," searching his car "without

authorization," "act[ing] on a false police report," and "physically assault[ing] and batter[ing]

1    him;" (2) *Monell* liability for failure to train police officers; (3) excessive force in violation of the

2    Fourth Amendment; and (4) an unreasonable search in violation of the Fourth Amendment.[1]

3    The defendant moves to dismiss the first and second claims, on the grounds that the first claim

4    is duplicative of the fourth and the second (the *Monell* claim) is insufficiently pleaded.

5    Alternatively, the defendant moves to bifurcate the *Monell* claim from the remaining claims.[2] The

6    court dismisses the first claim (except to the extent it asserts unreasonable seizure) and the *Monell*

7    claim without prejudice and denies the motion to bifurcate (without prejudice) as moot.

8

9                                         **STATEMENT**

10   **1.  The March 2022 Incident**

11   On March 9, 2022 at about 10:00 a.m., Officer Stewart of the Richmond Police Department

12   approached the plaintiff while he was repairing his friend's car in his driveway.[3] Officer Stewart

13   ordered the plaintiff to put his tools down and speak with her, and then asked whether he had any

14   weapons.[4] Before the plaintiff could finish responding, Officer Stewart "grabbed his hand, bent

15   two of his fingers back, spun him around, kicked his legs open[,] and began to search him."[5] She

16   said that someone reported that the plaintiff and his friend were waving a gun in a black Mercedes

17   Benz.[6] She informed the plaintiff that he was free to go after the plaintiff explained that he had

18   been at his residence since approximately 8:30 a.m.[7] The plaintiff then overheard from the police

19   radio that "Jamie Hopkins" was the person who made the report to the police. He asked to file a

20   police report against Mr. Hopkins, but Officer Stewart left without filing a report.[8]

21

22   [1] Compl. – ECF No. 1 at 5–12. Citations refer to material in the Electronic Case File (ECF); pinpoint

23   citations are to the ECF-generated page numbers at the top of documents.

     [2] Mot. – ECF No. 5.

24   [3] Compl. – ECF No. 1 at 6 (¶¶ 8–9).

25   [4] *Id.* (¶¶ 10–11).

26   [5] *Id.* at 7 (¶ 12).

     [6] *Id.* (¶ 13).

27   [7] *Id.* (¶ 14).

28   [8] *Id.* (¶¶ 15–16).

*United States District Court*
*Northern District of California*

1    As Officer Stewart drove towards Mr. Hopkins's residence, she encountered the plaintiff's

2    friend driving the plaintiff's black Mercedes Benz and demanded that the friend stop and exit the

3    car. She then searched the automobile without either a warrant or the plaintiff's authorization.[9]

4    She "did not find the alleged gun or any weapon."[10]

5    Officer Stewart later returned to the plaintiff's home with additional officers and Mr. Hopkins

6    and asked the plaintiff and his friend to participate in a lineup.[11] Mr. Hopkins identified the

7    plaintiff's friend. The plaintiff tried to record the events and obtain the officers' plate numbers, but

8    a second officer, Officer Khalfan, interfered by pushing the plaintiff and accusing him of "walking

9    up on an [o]fficer."[12]

10    When the plaintiff confronted Officer Stewart, she responded that she was aware of the history

11    between the plaintiff and Mr. Hopkins and that she knew that Mr. Hopkins' report was false.[13] The

12    plaintiff then tried to file a complaint against the officers involved but Officer Stewart refused to

13    give him any forms.[14]

14

15    **2. The November 2022 Incident**

16    On November 30, 2022, the Contra Costa Superior Court granted a protective order to protect

17    the plaintiff from Kathleen Lopez.[15] Ms. Lopez violated the protective order at least eleven

18    times.[16] The plaintiff "made numerous complaints" to the Richmond Police Department about

19    these violations, but the department informed him that the violations were not an arrestable crime

20    and that, if the officers did not see Ms. Lopez violating the protective order, they could not enforce

21

22

---

23    [9] *Id*. (¶¶ 17–18).

      [10] *Id*. (¶ 19).

24    [11] *Id*. at 8 (¶ 20).

25    [12] *Id*. (¶¶ 21–22).

26    [13] *Id*. (¶ 23).

      [14] *Id*. (¶ 24).

27    [15] *Id*. (¶ 25).

28    [16] *Id*. (¶ 26).

1    it.[17] When the plaintiff attempted to explain his protective order in detail, no officer assisted him.[18]

2    The officers also told him that if he answered Ms. Lopez's phone calls or responded to her text

3    messages, he would be arrested.[19]

4

5    **3.  Procedural History**

6        The plaintiff filed the case in state court and the defendant removed it to this court.[20] The

7    plaintiff brings four claims under 42 U.S.C. § 1983 for (1) "violation of federal civil rights" by

8    "invading his privacy," searching his car "without authorization," "act[ing] on a false police

9    report," and "physically assault[ing] and batter[ing] him," (2) *Monell* liability for failure to train

10   police officers, (3) excessive force in violation of the Fourth Amendment, and (4) an unreasonable

11   search in violation of the Fourth Amendment.[21] In addition to the Richmond Police Department,

12   the plaintiff names Doe defendants (presumably the unnamed police officers) whose identities are

13   not yet known.[22]

14       The court has federal-question jurisdiction. 28 U.S.C. § 1331. All parties consented to

15   magistrate-judge jurisdiction.[23] *Id.* § 636(c). The court held a hearing on August 10, 2023.

16

17                                    **STANDARD OF REVIEW**

18       A complaint must contain a "short and plain statement of the claim showing that the pleader is

19   entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds

20   upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

21   (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal

22

23   _____

[17] *Id.* (¶¶ 26–27, 29).

24   [18] *Id.* (¶ 28).

25   [19] *Id.* at 9 (¶ 30).

     [20] Notice of Removal – ECF No. 1 at 1–2.
26
     [21] Compl. – ECF No. 1 at 9–11 (¶¶ 33–61).
27   [22] *Id.* at 6 (¶ 4).

28   [23] Consents – ECF Nos. 7, 14.

United States District Court
Northern District of California

1    theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank*

2    *N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

3       A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide

4    the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

5    formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

6    enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned

7    up). A complaint must contain factual allegations that, when accepted as true, are sufficient to

8    "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

9    *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th

10   Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*,

11   838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*,

12   898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the

13   complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

14      Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that

15   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

16   alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability

17   requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

18   *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

19   short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

20      If a court dismisses a complaint because of insufficient factual allegations, it should give leave

21   to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook,*

22   *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court

23   dismisses a complaint because its legal theory is not cognizable, the court should not give leave to

24   amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see*

25   *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to

26   amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal

27   theory if given the opportunity").

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**ANALYSIS**

2   The defendant moves to dismiss claim one as duplicative of claim four and claim two for

3   failure to state a claim. Alternatively, the defendant asks to bifurcate the *Monell* claim (claim two)

4   if the court does not dismiss it.[24]

5

6   **1.   Duplicative Pleading**

7   The first issue is whether the plaintiff's first claim is duplicative. It is.

8   The first claim is that the defendant "violated [the plaintiff's] civil rights" by "invading his

9   privacy and searching his black Mercedes Benz automobile without authorization," "act[ing] on a

10  false police report," and assaulting and battering him.[25] The fourth claim is more narrowly based

11  on the alleged "unreasonable search" of the vehicle.[26] The plaintiff contends the first claim does

12  not encompass the fourth because the first is based on "invading [his] right of privacy by

13  searching his vehicle without a warrant and for assaulting him without probable cause." He

14  explains that the search of the automobile is referenced in the first claim "to provide a context in

15  which the assault is alleged to have taken place."[27]

16  A court may dismiss a claim if it fully incorporates another claim. Fed. R. Civ. P. 8(d)(3) ("A

17  party may state as many separate claims or defenses as it has[.]"); *Gillespie v. Cnty. of Alameda*,

18  No. 20-cv-03735-DMR, 2020 WL 5106858, at *5 (N.D. Cal. Aug. 31, 2020) (dismissing without

19  prejudice claim for unlawful detention as duplicative of unlawful seizure premised on the same

20  facts). For example, a Fourteenth Amendment substantive-due-process claim is duplicative of a

21  Fourth Amendment claim if based on the same seizure. *Burns v. City of Concord*, No. C 14–00535

22  LB, 2014 WL 5794629, at *9 (N.D. Cal. Nov. 6, 2014). Similarly, claims for excessive and deadly

23  force are duplicative where they arise from the same conduct. *Ayala v. Hayward*, No. C 10–02709

24  LB, 2010 WL 3619566, at *3–4 (N.D. Cal. Sept. 13, 2010).

25  —————————

26  [24] Mot. – ECF No. 5.

    [25] Compl. – ECF No. 1 at 9 (¶¶ 33–40).

27  [26] *Id.* at 11 (¶¶ 54–61).

28  [27] Opp'n – ECF No. 12 at 2.

1    Here, the plaintiff's first claim does not specify a constitutional violation but appears to allege

2    several Fourth Amendment violations: excessive force, unreasonable seizure (of the plaintiff) for

3    lack of probable cause, and unreasonable search (of the plaintiff's car). To the extent claim one

4    asserts an unreasonable search of the car, it is duplicative of claim four because both arise from the

5    same act — the vehicle search. And to the extent claim one asserts excessive force, it duplicates

6    claim three, because both arise from the force used by the police officers on the plaintiff. The

7    court thus dismisses the first claim to the extent it asserts excessive force or an unreasonable

8    search — but the court does not dismiss the claim to the extent it asserts an unreasonable seizure

9    (or in other words a wrongful or false arrest), which is not elsewhere claimed in the complaint.

10   *See, e.g.*, *Davis v. Ibrahim*, No. 821CV01032JVSADS, 2021 WL 6618746, at *2 (C.D. Cal. Nov.

11   16, 2021) (excessive force and unreasonable seizure can be distinct claims).

12

13   **2.  The *Monell* Claim (Claim Two)**

14   The plaintiff claims a *Monell* violation in the form of the Richmond Police Department's

15   failure to train its officers. The defendant moves to dismiss the claim on the ground that the

16   plaintiff has not alleged facts to plausibly show deliberate indifference.[28] The court grants the

17   motion.

18   Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official

19   policy or custom causes a constitutional tort. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690

20   (1978). The city cannot be held vicariously liable for the unconstitutional acts of its employees

21   under the theory of respondeat superior. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S.

22   397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir.

23   1995).

24   To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a

25   plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that

26   right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the

27

28   [28] Mot. – ECF No. 5 at 10–15.

United States District Court
Northern District of California

plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A *Monell* claim can be based on any of the following theories: (1) a longstanding practice or custom, (2) the failure to adequately train, or (3) a constitutional violation committed or ratified by an official with final policy-making authority. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id*. (cleaned up). Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* (cleaned up).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id*. at 61–62 (cleaned up). "A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities[.]" *Id*. at 62 (cleaned up). Thus, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (cleaned up). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the

1    consequences of their action — the deliberate indifference — necessary to trigger municipal

2    liability." *Id*. (cleaned up). "Without notice that a course of training is deficient in a particular

3    respect, decisionmakers can hardly be said to have deliberately chosen a training program that will

4    cause violations of constitutional rights." *Id*.

5        The plaintiff does not allege facts that plausibly plead a failure to train that amounts to

6    deliberate indifference to his rights. He bases the claim on the two incidents described above —

7    the car search and the defendant's failure to act on his "numerous" complaints about Ms. Lopez's

8    violating a protective order.[29] These conclusory allegations do not show that the incidents are

9    factually similar or plausibly show a "persistent and widespread" custom (as opposed to "isolated

10   or sporadic" incidents). *See, e.g.*, *Sweiha v. Cnty. of Alameda*, 19-cv-03098-LB, 2019 WL

11   4848227, at *4-5 (N.D. Cal. Oct. 1, 2019) (plaintiff's allegations of five other incidents do not

12   show a custom or policy where the incidents "have markedly different facts"); *Est. of Mendez v.*

13   *City of Ceres*, 390 F. Supp. 3d 1189, 1208 (E.D. Cal. 2019) ("[i]f [the] alleged prior instances are

14   sufficiently similar to [plaintiff's circumstances] . . . and the instances constitute a pattern of

15   violations rather than isolated incidents to which policymakers failed to respond or inadequately

16   responded," then the plaintiff has sufficiently stated a *Monell* claim). The court thus dismisses the

17   claim with leave to amend.

18

19   **3.  Claim Bifurcation**

20       Finally, the defendant asks to bifurcate the *Monell* claim from the claims against the individual

21   officer defendants.[30] Fed. R. Civ. P. 42(b). Because the court dismisses the *Monell* claim, this

22   argument is moot. It is also premature insofar as the plaintiff has not yet named any individual

23   defendants.

24

25

26

27   [29] Compl. – ECF No. 1 at 10 (¶¶ 41–46).

28   [30] Mot. – ECF No. 5 at 15–16.

ORDER – No. 23-cv-03006-LB                    9

*United States District Court*
*Northern District of California*

**CONCLUSION**

The court grants the defendant's motion in part and dismisses the plaintiff's first claim (except to the extent it asserts wrongful arrest) and his second claim without prejudice. The plaintiff can file an amended complaint by September 7, 2023, and must attach a blackline comparison of the amended complaint against the current complaint.

This resolves ECF No. 5.

**IT IS SO ORDERED.**

Dated: August 10, 2023

_____

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California